FILED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA 01 DEC -3  AM 7: 55
## SOUTHERN DIVISION

U.S. DISTRICT COURT

| | |
|---|---|
| **BONNIE COSPER,** | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ] CV-00-N-3383-S |
| | ] |
| **LONG-LEWIS FORD-LINCOLN-** | ] |
| **MERCURY OF CULLMAN, INC., et** | ] |
| **al.,** | ] |
| | ] |
| Defendant(s). | ] |

ENTERED

DEC 0 3 2001

## Memorandum of Opinion

### I.    Introduction

The court has for consideration a motion for summary judgment, filed by the

defendants, Long-Lewis Ford-Lincoln-Mercury ("Long-Lewis Ford"), Eckenrod Ford-

Lincoln-Mercury ("Eckenrod Ford"), and Allan Hassle.  (Doc. # 32).[1]  The defendants

maintain that summary judgment is appropriate as to all counts alleged in the complaint of

plaintiff.  The parties have submitted briefs and the court finds the issues now ripe for

decision.  Upon due consideration, the motion of defendants is due to be granted in part

and denied in part.

---

[1] The court notes that the submissions of defendants are somewhat confusing and contradictory.  Listed
as participants in the Motion for Summary Judgment are Long-Lewis Ford, Eckenrod Ford, Vaughn Burrell, Michael
Eckenrod, and Lisa Eckenrod.  (Doc. # 32).  Listed as participants in the Initial Submission in Response to Exhibit
"D" of the Court's Order are Long-Lewis Ford, Eckenrod Ford, and Allan Hassle.  (Doc. # 34).  As the court has
already dismissed all individual claims against Mr. Burrell, Mr. Eckenrod, and Ms. Eckenrod (Doc. # 27), the court
will treat the parties to this motion for summary judgment as those designated on defendants' Initial Response.



## II.    Background

Plaintiff Bonnie Cosper ("Cosper") was employed by Eckenrod Ford[2] dealership from October 1995 until August 1999. (Doc. # 39, Ex. 1, Dep. of Bonnie Cosper, pp. 25-27 (hereinafter "Cosper Dep.")). During that time, she held several different positions of employment: service writer, truck shop service writer, truck shop manager, and general service manager. (Cosper Dep., pp. 22-28; 173-75; *see also* Doc # 33, Movant's Statement of Facts, ¶¶ 17-20).[3] During this time, she was also allegedly subjected to numerous instances of gender-based discrimination, hostility, and harassment, ultimately leading to her termination in 1999. These instances and her termination form the basis upon which she has filed the above-styled action, alleging violations of the Equal Pay Act, as well as Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. *See* 29 U.S.C. § 26(d)(1); 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. §§ 1981, 1983, 1985, 1988.

### A.    Plaintiff's Allegations of Discrimination and Harassment in the Workplace

Plaintiff's problems at Eckenrod Ford apparently began with Wade Bentley. Plaintiff alleges that on numerous occasions during her employment at the dealership, Mr. Bentley asked her to run invalid warranty claims on certain types of cars. (Cosper Dep., pp. 55-70; 75-85). Plaintiff maintains that she refused to submit any invalid claims, and as a result, Mr. Bentley threatened her, harassed her, and manipulated her. (*Id.*, pp. 69; 78). Mr. Bentley

---

[2] In August of 1999, Eckenrod Ford purchased Long-Lewis Ford, assuming its assets and liabilities. (Doc. # 34, Movant's Initial Submission, p. 1 n.1). For purposes of this memorandum, the court will use the title Eckenrod Ford to refer to both Long-Lewis Ford and Eckenrod Ford.

[3] The record contains some dispute as to whether plaintiff was hired for the position of general service manager, or for the dual positions of general service manager and parts and service manager. This dispute and its relevance to plaintiff's claims are discussed more fully *infra*.

allegedly threatened, harassed, and manipulated her by saying such things as "I'm going to have to take you back to Mike [Eckenrod] again, you are not getting the message"; or "I know you are not a dumb blonde"; and even suggesting that "if I didn't play along . . . I would be out, that they got what they wanted out of [Mike] Eckenrod." (*Id.*, pp. 78-79; 82-85). Plaintiff also stated in her deposition that "I feel like if I were not a woman, that Wade Bentley would not have behaved towards me in the manner that he did." (*Id.*, p. 82).

Plaintiff maintains that she complained to Mike Eckenrod, general manager of the dealership, about Mr. Bentley's behavior toward her on many occasions. (*Id.*, pp. 94-98). According to plaintiff, Mr. Eckenrod generally responded to her by instructing her to try and get along with Mr. Bentley. (*Id.*, p. 96). Plaintiff also contends that she saw Mr. Bentley on one occasion place his hands on the back and buttocks of one female at the dealership, Alisa Manley. (*Id.*, pp. 87-90). Evidently Mr. Bentley and Ms. Manley had previously dated, but were not seeing each other at the time Mr. Bentley touched her. (*Id.*, p. 88). When plaintiff expressed her disagreement with this behavior to Mr. Eckenrod, he explained to her that he would speak to Mr. Bentley. (*Id.*, p. 98-99).

Although the discussion *supra* delineates the scope of plaintiff's allegations against Mr. Bentley, plaintiff also submits several affidavits, as well as deposition testimony from Teresa Charney, containing additional allegations against Mr. Bentley. Affidavit testimony from Ray Fowler states that "sexual jokes, touching, and lewd, vulgar sexual innuendos occurred on a daily basis during the period of time that I was employed with Eckenrod/Long Lewis Ford [from September 1997 until August 1998]. I observed Wade Bentley . . . and Alan Hassell [sic], all participating in this type of harassment." (Doc. # 39,

3

Ex. 3, Affidavit of Ray Fowler, pp. 1, 3). Affidavit testimony from Linda Braswell, who worked at Eckenrod from an undisclosed period until December 1999, states that "Mike Eckenrod, Rick Raybon, and Wade Bentley were aware of and participated in the persistent sexual environment at his dealership." (Doc. # 39, Ex. 4, Affidavit of Linda Braswell, pp. 1-2.). Finally, deposition testimony from Teresa Charney includes numerous allegations against Mr. Bentley, ranging from statements that Mr. Bentley was "out to get" the plaintiff; that he went out of his way for employees other than Ms. Charney; that he was mean to Ms. Charney and made her feel stupid; and that he and other employees made inappropriate comments and acted in an apparently threatening way toward another female employee, Linda Braswell. (Doc. # 39, Ex. 6, Dep. of Teresa Charney, pp. 73-75; 130-32; 169-71; 182-84, 192-96; 201-04).

Plaintiff also allegedly endured unwanted and unsolicited hugging from Mr. Eckenrod. According to plaintiff, Mr. Eckenrod hugged her a "couple of times" around the shoulder area shortly after she started work at the dealership. (Cosper Dep., pp. 91-92). After plaintiff told Mr. Eckenrod that she was not comfortable with his behavior, he never hugged her again. (*Id*., p. 92). Plaintiff also contends that Mr. Eckenrod was well aware of plaintiff's troubles with Mr. Bentley, but did nothing to alleviate the issues. (*Id*., pp. 93-

4

99).[4]  Similarly, plaintiff alleges that Mr. Eckenrod did not support her as a manager.  (*Id.*,
pp. 126-37).

Plaintiff's affidavit adds little to the above, save the statement that "Mike Eckenrod
was aware of the sexually hostile environment at his dealership.  Not only was he aware of
the sexually explicit comments, jokes, language and touching, but also he participated in
that hostile environment on ocassions [sic] wherein he massaged and touched female
employees . . . ."  (Doc. # 39, Ex. 2, Affidavit of Bonnie Cosper, p. 2).  Similar contentions
are raised in the previously mentioned affidavits of Ray Fowler, Linda Braswell, and Teresa
Charney.  (Doc. # 39, Ex. 3-5).  According to Mr. Eckenrod, however, the only instance of
offensive sexual conduct brought to his attention during the years of 1990-1998 involved a
divorced couple, parties not involved in this action.  (Doc. # 35, Ex. 9, Dep. of Mike
Eckenrod, pp. 44-54 (hereinafter "Eckenrod Dep.")).

The source of most of the alleged instances of inappropriate behavior is Allan
Hassle.  As plaintiff states in her deposition, Mr. Hassle "did the touchy thing."  (Cosper
Dep., p. 107).  He (1) put his hands on plaintiff's neck and back; (2) made comments about
plaintiff's breasts (e.g., whether or not "they were real"); (3) called a co-worker of plaintiff's
a "little dick head" in front of her; (4) asked plaintiff on several occasions if she would "go
for a ride with him," which she interpreted as inappropriate solicitation; (5) asked plaintiff

---

[4] As plaintiff explained in her deposition:
I talked to Mike [Eckenrod] about Wade's [Bentley's] attitudes and his behaviors.  And I always
really thought that there would be some action and that Wade would stop. . . .  I'm talking about
Mr. Bentley's behaviors toward me.  I talked to Mike about the fact that Wade did not respect
me as a manager.  I do not feel like Wade Bentley respected me as a person.  I feel like he
disrespected me to a large extent because I'm a female. . . .  Mike would tell me that we were
all there to work together.
(Cosper Dep., pp. 95-96).

on one occasion what she could do "for him with his woman problems"; (6) said on one occasion that plaintiff would be "his wife number four or five"; (7) asked plaintiff on one occasion if being a "prude" was worth losing her job; (8) called plaintiff "frigid"; and (9) "on a couple of different occasions grabbed his self [sic] and shook his, what I consider to be private parts, at me." (*Id.*, pp. 107-25; 208-09).

Plaintiff also alleges that Mr. Hassle inappropriately touched other female employees of the dealership. (*Id.*, pp. 119-21). In her affidavit, plaintiff maintains that Hassle "persistently and on a daily basis made lewd and vulgar remarks to female employees, and made lewd and vulgar sexually explicit jokes." (*Id.*, Ex. 2, pp. 1-2). Descriptions of like behavior are contained in the affidavits of Mr. Fowler, Ms. Braswell, and Ms. Charney. (*Id.*, Ex. 3-5). Plaintiff maintains in her deposition that she complained of Mr. Hassle's behavior to Mr. Eckenrod on more than one occasion. (Cosper Dep., pp. 195-97). Mr. Eckenrod denies this fact. (Eckenrod Dep., pp. 52-54).

Plaintiff levies additional allegations of impropriety against co-worker Gary Manley. According to plaintiff, she saw Mr. Manley on one occasion place his hands on the leg and thigh of one female employee, and on another occasion heard Mr. Manley comment as to a female co-worker that her "pants were so tight, that a fly could not land on her ass without slipping off." (Cosper Dep., pp. 140-41). On a third occasion the following occurred: "I was slicing some cake and I offered Gretchen some. And she told me that she had put on a few pounds, that she had better not. And Gary told her, he said, well, you just got back off from your honeymoon, you should have worked off some of that while you were gone." (*Id.*, pp. 142-43). Similar allegations against Mr. Manley are found in Ms. Braswell's affidavit: "Daily,

6

I heard vulgar, sexually related jokes from Gary Manley and other male employees." (*Id.*, Ex. 4, p. 2).

## B.      Plaintiff's Termination

Plaintiff was ultimately terminated from her position as general service manager in August 1999. (Cosper Dep., pp. 27, 153-55). In her deposition, she maintains that she was "terminated in the most part because I'm a woman, because I didn't let them put their hands on me. . . .   I feel like if I had done the touchy-feely thing and played the little games, I could probably still be there." (*Id.*, p. 153). She also stated that Mr. Eckenrod "did not give me a specific reason for terminating me." (*Id.*, p. 154; *see also* pp. 157-58). "I felt like the reason why Mike fired me was because of the influence from Wade [Bentley] and Allan [Hassle]."

Mr. Eckenrod disputes this claim in his deposition. He contends that he provided plaintiff with the reason for her termination, the reason being that she experienced an excessive amount of employee turnover while she was general service manager. (Eckenrod Dep., pp. 70-75; 85). Furthermore, he states that plaintiff was replaced with another female employee. (*Id.*, pp. 32-34; *Id.*, Ex. # 14, Affidavit of Mike Eckenrod, p. 3). Plaintiff does not dispute this fact. (Doc. # 37, ¶ 80).

## C.      Plaintiff's Allegations of Discrimination in Promotion and Compensation

Plaintiff also makes several allegations with respect to her advancement at the dealership and her compensation for her job performance. She first contends that she received a smaller bonus than appropriate in the months preceding her termination, and was never provided any documentation to explain the reduction. (Cosper Dep., pp. 50-54;

7

187-89; 203). She next contends that she received less than the agreed-to pay scale during the period of time she worked as a truck shop service writer. (*Id.*, pp. 158-61).

Finally, plaintiff contends that she denied both a promotion and equal pay when she took over the position of general service manager. (*Id.*, pp. 171-75; 181-84; *see also* Eckenrod Dep., pp. 56-59). She maintains that Mr. Eckenrod promoted her to the same position vacated by her predecessor, Darrell Taff, which entailed managerial duties and responsibilities touching both the service department and the parts and service department. (Cosper Dep., pp. 173-75). She further insists that she was doing the same work as Mr. Taff had done, but was not receiving equivalent compensation. (*Id.*, pp. 173-75; 181-84).[5] This work included such duties as those attributable to her position as service manager, as well as duties requiring her to work closely with the parts manager in making decisions and running reports. (*Id.*, pp. 171-72).

Mr. Eckenrod claims that Mr. Taff actually held the position of parts and service director, which encompassed the dual responsibilities of service manager and supervisor of the parts manager. (Eckenrod Dep., pp. 56-57). He was the only person to ever hold the position of parts and service director, and when he left the dealership, the position of parts and service director was eliminated. Plaintiff was promoted to the remaining position of service manager. (*Id.*, p. 57; *see also id.*, Ex. 14, Affidavit of Mike Eckenrod, p. 2). Furthermore, her initial pay scale as service manager was higher than that of the three

---

[5] Although the facts are not entirely clear, it appears that Mr. Taff earned somewhere in the neighborhood of $70,000 to $85,000 as parts and service director, while plaintiff earned between $50,000 and $64,000 for her position as service manager. (*See* Eckenrod Dep., pp. 58-60; *see also* Cosper Dep., pp. 177-85).

8

previous male service managers. (*Id*., Ex. 14, p. 2). According to Eckenrod, the dealership never had a position entitled parts and service manager. (Eckenrod Dep., pp. 89-90).

In response to this assertion, plaintiff offers several documents entitled MORS (Master Owner Relations System) II Dealer Personnel Information. Three of these documents reference plaintiff as "service director." The fourth, dated February 6, 1998, references her as parts and service manager. (Doc. # 39, Ex. 8, pp. 1-4).

## III. Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted); *see also Crawford-El v. Britton*, 523 U.S. 574, 600 n.22 (1998). The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met this burden, "the nonmoving party to go beyond the pleadings and by her own affidavits, or by

9

the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

The court must grant a motion for summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249 (citations omitted); *accord Dzikowski v. NASD Regulation, Inc. (In re Scanlon)*, 239 F.3d 1195, 1198 (11th Cir. 2001); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). In rendering its decision, "[a] court 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000) (quoting *Reeves*, 530 U.S. at 150).

## IV.   Discussion

The defendants contend that summary judgment is due against the plaintiff on all counts alleged in her complaint. They argue that plaintiff is without sufficient evidence to establish a prima facie case of a hostile work environment or discrimination, and maintain that plaintiff's claim under the Equal Pay Act fails as a matter of law. The defendants also

10

move to strike several affidavits plaintiff has provided in opposition to their motion for summary judgment. As defendants' motion to strike necessarily bears upon its motion for summary judgment, the court pauses to address the evidentiary arguments raised.

### A.  The Motion to Strike Plaintiff's Affidavits

The defendants contend that plaintiff's proffered affidavits are mere shams, designed to create an issue of material fact so that plaintiff's case can survive summary judgment. (Doc. # 40, Def.'s Mot. to Strike Aff., pp. 3, 4, 8 (hereinafter "Mot. to Strike")). Furthermore, the defendants contend that various statements within the affidavits are due to be stricken as inadmissible conclusions, generalities, or speculations, or as inadmissible hearsay. With de minimis exception, the court does not agree.

Courts may disregard affidavits as "shams" only when "a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact and that party attempts thereafter to create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986) (quoting *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) (quotations omitted)); *see also Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1342-43 (11th Cir. 2000) (citing *Van T. Junkins* with approval); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987) (same). Such extreme action is taken sparingly and with caution, however, for it risks the imposition of drastic sanctions simply for the failure or betrayal of memory. Moreover, a restrained application of this rule secures the traditional role of the trier of fact as the proper arbiter of an affiant's credibility. *See Rollins*, 833 F. 2d at 1530; *see also Tippens*, 805 F.2d at 953-

11

54; *cf. Reeves v. Sanderson Plumbing Prods.*, 530 U.S. at 150-51. Only when an affidavit presents inherent inconsistencies with existing testimony should a court disregard its contents. *See Rollins, supra.* Considering the affidavits against this standard, the court finds little basis for the objections proffered by the defendants.

For example, the defendants maintain that the affidavit of Ms. Charney contains statements inconsistent with her prior testimony. (Mot. to Strike, pp. 6-7). One such statement the defendants seek to strike is an allegation by Ms. Charney that Hassle touched her improperly "on more than one occasion." (Doc. # 39, Ex. 5, pp. 1-2). The defendants argue that Charney's original testimony alleged only one instance of improper touching by Hassle. (Mot. to Strike, p. 6). The equivocal force of this argument belies its merit in light of the standard of this circuit. Ms. Charney's deposition does not purport to establish the number of times that Hassle allegedly touched her in an improper manner. Rather, her deposition simply establishes that Hassle never again touched her in an improper manner after she instructed him to stop. The case law *supra* clearly does not recognize inconsistencies constructed entirely from negative inference, and the court declines to do so here.[6]

Inconsistencies are apparent, however, between plaintiff's deposition testimony that she never "had any issues with Rick Raybon," and her affidavit statement "Alan Hassel [sic], Rick Raybon, and Larry Britton persistently and on a daily basis made lewd and vulgar remarks to female employees, and made lewd and vulgar sexually explicit jokes." (*See*

---

[6] For similar reasons, the court declines to exclude Ms. Charney's affidavit statement as it pertains to Mr. Eckenrod, or plaintiff's affidavit testimony as it pertains to Larry Britton, Mr. Eckenrod, or Mr. Hassle, or the basis for her termination. (Doc. # 40, pp. 11-13).

Cosper Dep., pp. 48-49; Ex. 2, pp. 1-2).  Unlike the previous examples, however, the inconsistency here is evident.  Plaintiff stated in her deposition that she had no problems with Mr. Raybon.  As the affidavit statement is in direct contradiction to this assertion, it is accordingly stricken.

The remainder of defendants' motion attacks various statements in the affidavits as inadmissible conclusions, generalities, speculations, or hearsay.  The cases of this circuit permit the consideration of inadmissible evidence at the summary judgment stage if such evidence is capable of being reduced to admissible evidence for trial.  *See McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996); *see also Macuba v. DeBoer*, 193 F.3d 1316, 1324 (11th Cir. 1999).  This is true even for hearsay statements, as courts may consider such statements if it is apparent that the statements might qualify during trial as admissible non-hearsay or as an exception to the hearsay rule.  *See Macuba*, 193 F.3d 1322-24.

The defendants aver numerous affidavit statements as inadmissible conclusions, generalities, or speculations.  In reviewing these statements, the court finds none to be of a kind that cannot be reduced to admissible form at trial.  Defendants also challenge two affidavit statements – one by Ms. Charney and one by the plaintiff – on hearsay grounds. The relevancy of Ms. Charney's statement to plaintiff's case is remote at best.  Accordingly, the court declines to consider it for purposes of summary judgment.[7]  As for plaintiff's statement, the court believes plaintiff will have little difficulty reducing this statement to an admissible form for trial.

---

[7] Comity largely compels this decision, as also pending in this district (indeed, across the hall) is a similar case specifically involving Ms. Charney and the defendants. *See Charney v. Long-Lewis Ford-Lincoln-Mercury of Cullman, Inc.*, CV-00-B-3382-S (Blackburn, J.).

In sum, the court finds that defendants' motion to strike the affidavits is due to be and is hereby denied. The court now turns to the individual arguments of the defendants.

## B.   Sexual Harassment – Hostile Work Environment

Arguably, the complaint of plaintiff and her deposition allege facts sufficient to plead a claim of sexual harassment culminating in a "tangible employment action" and a claim of sexual harassment not culminating in a tangible employment action, but which is sufficiently severe and pervasive to alter working conditions. *See Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001). In other words, plaintiff potentially presents both hostile work environment and *quid pro quo* harassment claims. *See Johnson v. Booker T. Washington Broad. Serv.*, 234 F.3d 501, 508 (11th Cir. 2000) ("Generally, sexual harassment comes in two forms: harassment that does not result in a tangible employment action (traditionally referred to as 'hostile work environment' harassment), and harassment that does result in a tangible employment action (traditionally referred to as '*quid pro quo*' harassment.")); *see also Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000). In their Initial Submission, however, the defendants maintain that plaintiff pleads only a claim of hostile environment. (Doc. # 34, p. 3). Plaintiff nowhere disagrees with this characterization. (Doc. # 38, pp. 1-13). Accordingly, the court deems any claim of sexual harassment culminating in a tangible employment action abandoned, and will focus this section of its opinion only on plaintiff's allegations of a hostile work environment.

A plaintiff must establish the following to support a hostile work environment claim:

(1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the

14

harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Gupta*, 212 F.3d at 582 (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.

1999) (*en banc*)).  The fourth element "is the element that tests the mettle of most sexual

harassment claims . . ., [r]equiring the plaintiff to prove that the harassment is severe or

pervasive ensures that Title VII does not become a mere 'general civility code.'" *Gupta*,

212 F.3d at 583 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  In recent

years, however, courts have placed "renewed emphasis on what it means to be

discriminated against 'because of . . . sex.'" *Pipkins v. City of Temple Terrace*, No. 01-

11736, 2001 U.S. App. LEXIS 21106, at \*4 (11th Cir. 2001) (quoting *Oncale v. Sundowner

Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998)).

> The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. . . . [H]arassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. . . .  [T]he plaintiff . . . must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *discrimination* . . . because of . . . sex.

*Oncale*, 523 U.S. at 80-81 (quotations omitted; emphasis in original).  In other words, plaintiff

must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and

insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510

U.S. 17, 21 (1993) (*quoting Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)).

To make such a showing, a plaintiff must demonstrate that her work environment was fraught with conduct that "a reasonable person would find hostile or abusive" and that she herself perceives as abusive. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc) (quotations omitted).  The latter aspect of this standard is a subjective consideration, and one rarely contested. *See Gupta*, 212 F.3d at 587. The former, objective aspect to this test, requires actual proof of severe and pervasive conduct. In measuring evidentiary proffers on this point, courts should consider:

(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.

*Id.* (citations omitted). Courts must consider such proffers in their context and as a totality. Facts are not to be examined in isolation. *See Mendoza*, 195 F.3d at 1246. Together, though, the evidence must demonstrate that plaintiff was exposed to sufficiently severe and pervasive conduct that created a hostile or abusive working environment. *See id.*

Defendants vigorously dispute the totality of the evidence in this case as sufficient to defeat summary judgment. Focusing their argument on the fourth element listed *supra*, the defendants maintain that none of the behavior complained of by plaintiff suffices against the body of law demarcating actionable harassment and hostility. In light of the totality of circumstances alleged by plaintiff, the court cannot agree.

16

The plaintiff's evidentiary proffers detail an extensive history of occurrences at Eckenrod Ford which a reasonable jury might find to be sufficiently serve and pervasive such as to create a hostile or abusive working environment. The evidence pertaining to Mr. Hassle alone renders this case inappropriate for summary judgment. As discussed *supra,* plaintiff recounted in her deposition instances where Mr. Hassle grabbed his genitals and shook them at her, touched her, made comments which she inferred to be solicitations, made comments about her breasts, and made other comments of a sexual nature. She also stated in her affidavit that Mr. Hassle regularly made lewd and vulgar remarks to female employees, and told lewd and vulgar, sexually explicit jokes while at the dealership. The bulk of this statement is reiterated in the three additional affidavits submitted by plaintiff.

Measured against the standard set forth by the cases, the court cannot say that no reasonable jury could not find this behavior to be sufficiently severe and pervasive conduct that created a hostile or abusive working environment. Admittedly, the severity of the behavior to which plaintiff was subjected is clearly less established than it is in some of the reported cases cited by the defendants. For example, plaintiff received unwanted touching only in a few instances, and then only upon her shoulders or as a hug. When she requested that the offending party cease touching her, he did. At the same time, however, plaintiff received numerous solicitations, and in one instance saw Mr. Hassle grab his genitals and shake them at her.

On balance with the remaining factors, the court does not believe that the lack of acute severity proves fatal to plaintiff's claim. The frequency of alleged gender hostility is considerable, with a regularity of occurrences described by both plaintiff and others

17

testifying in support as daily.[8]  A reasonably objective party could discern this behavior as both threatening and humiliating. While Mr. Hassle's lewd gesture, comments, solicitations, and sexual jokes largely speak for themselves, also compelling here is the instance where Mr. Hassle asked plaintiff if being a prude was worth losing her job.  Finally, a reasonable jury could perceive this behavior as constituting a hindrance to job performance. Although plaintiff did not quit her job in response to this behavior, she stated in her deposition that it made going to work a great difficulty.

The court recognizes the body of law cited by the defendants as demonstrative of the high standard that a plaintiff must reach in order to maintain a hostile work environment claim under Title VII.  But in reviewing the relevant cases of this circuit, the court finds neither *Gupta* nor *Mendoza* to provide the "guideposts" for this case.  In both *Gupta* and *Mendoza*, the allegedly hostile conduct amounted to little more than lingering stares, ambiguous touching (and sniffing) of one co-worker by another, and several instances of ambiguous advances. *See generally Gupta*, 212 F.3d at 577-81; *Mendoza*, 195 F.3d at 1242-44.  In the instant case, plaintiff has come forward with numerous overtly sexual occurrences far beyond anything present in the aforementioned cases, including actions by Mr. Hassle toward plaintiff that a jury could reasonably, and readily, distinguish as solicitations, as opposed to advances.

___

[8] The court understands the concerns of defendants, as expressed by their motion to strike and summary judgment submissions, that plaintiff is exaggerating the amount of improper behavior to which she was exposed so as to survive summary judgment.  Plaintiff, of course, carries her evidentiary burden through trial, and if the evidence adduced does not resemble the facts as alleged here, the defendants may always seek relief under the applicable provisions of the Federal Rules of Civil Procedure.

18

The instant case more closely resembles the facts of *Johnson v. Booker T. Washington Broadcast Service*. There the plaintiff alleged fifteen instances of behavior she believed constituted sufficiently severe and pervasive harassment. The behavior largely involved comments from one co-worker directed at another, but included such actions as the male co-worker grabbing his pants in such a way as to reveal his genitals, as well as the male co-worker making comments to the female co-worker which she interpreted as a sexual reference.[9] Weighing the conduct alleged against the four factors used to measure severity and pervasiveness, the court found the alleged conduct sufficiently severe and pervasive for purposes of plaintiff's prima facie case. *See Johnson v. Booker T. Washington Broadcast Serv.*, 234 F.3d at 509. In reaching this conclusion, the court noted that it was viewing the evidence in a light most favorable to the plaintiff, per the requirements of review at the summary judgment stage of proceedings. *See id.* at 509 n.8.

---

[9] The behavior listed by the court included:

1. Donnell repeatedly commented that Johnson had a sexy voice; 2. Donnell called out Johnson's name and winked at her; 3. Donnell called out Johnson's name and pulled his pants up in an obscene manner, revealing an imprint of his private parts; 4. Donnell called out Johnson's name and then looked her "up and down" while staring at her in a sexual manner; 5. Donnell said "Johnson, I like you and as long as I like you you're going to be all right. You don't have to worry about your job;" 6. Donnell repeatedly attempted to massage Johnson's shoulders against her wishes; 7. Donnell stuck his tongue out at Johnson in an obscene manner; 8. Donnell inappropriately rubbed his body parts against Johnson; 9. Donnell asked Johnson why a person with a body like hers always covered it up; 10. Donnell commented that he could "pull [Johnson] up" anytime, a comment Johnson interpreted as a sexual reference; 11. Donnell got close to Johnson's face as if to kiss her; 12. Donnell commented that Johnson "really knocked him off his feet;" 13. Donnell stated that "he had to stay on his side of the room;" 14. Donnell commented inappropriately about sex to Johnson and questioned Johnson about her own sex life; and 15. Donnell asked Johnson if she ever got lonely.

*Johnson v. Booker T. Washington Broadcast Serv.*, 234 F.3d at 506.

19

The court thus finds that plaintiff has come forward with sufficient evidence to withstand the defendants' motion for summary judgment as to the claim of a hostile work environment. Summary judgment as to this count is therefore denied.[10]

**C.     Discrimination**

"Title VII prohibits an employer from 'discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (quoting 42 U.S.C. § 2000e-2(a)(1)). "A plaintiff in a Title VII action may attempt to show this discrimination by offering either direct or circumstantial evidence." *Schoenfeld, supra; see also Hill v. Metropolitan Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1539 (11th Cir. 1988), modified, 848 F.2d 1522 (11th Cir. 1988).

Plaintiff alleges (albeit ambiguously) three individual claims of discrimination against Eckenrod Ford. The first is a claim of discrimination in her termination. The second is a claim of discrimination in her promotion to the position of service manager. The third is a claim of wage discrimination. As two of these claims – termination and promotion – may be quickly resolved, the court will briefly turn its attention to them.

---

[10]Plaintiff has offered a great deal of evidence regarding Mr. Bentley, and how his treatment of her with respect to the submission of warranty claims aggravated and augmented the hostile work environment to which she was subjected. This evidence is not, however, relevant to plaintiff's claim of a hostile work environment, and will not be considered probative of such at trial. Plaintiff can in no way say or demonstrate that Mr. Bentley's behavior toward her with respect to the warranty claims occurred because of, or but for, her sex. *See, e.g., Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. at 80-81; *Pipkins v. City of Temple Terrace*, No. 01-11736, 2001 U.S. App. LEXIS 21106, at *4; *Mendoza*, 195 F.3d at 1248 n.5. A man in her position, who acted with similar reluctance in yielding to the warranty requests of Mr. Bentley, might well have received the same response. More importantly, however, these types of workplace disputes do not find an answer under the aegis of Title VII merely because the adversarial parties are of a different gender.

## 1. Discrimination in Termination

To establish a prima facie case of discrimination in termination, the plaintiff must show "(1) that she was a member of a protected class, (2) that she was qualified for the job, (3) that she suffered an adverse employment action, and (4) that she was replaced by someone outside the protected class." *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 828 (11th Cir. 2000); *see also Walker v. Mortham*, 158 F.3d 1177, 1187 n.21 (11th Cir. 1998). In the present case, the defendants have asserted, and plaintiff has admitted, that the person hired to replace the plaintiff was, in fact, a female. Plaintiff therefore cannot present a prima facie case of discrimination in termination. Summary judgment as to this claim is granted.

## 2. Discrimination in Promotion

Under the facts of the present case, the applicable standard required for a prima facie case of discrimination in promotion is that as articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*. Thus a plaintiff must establish that she belongs to a protected class, applied for and was qualified for a job for which the employer was seeking applicants, was rejected despite these qualifications, and, after the rejection, the position remained open and the employer continued to seek applicants with plaintiff's qualifications. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Walker v. Mortham*, 158 F.3d at 1185-87.

Here again plaintiff fails to present a prima facie case. Although the parties do disagree as to the relevant facts, their dispute does not rise to the one of materiality that would preclude judgment as a matter of law. Plaintiff received a promotion. The disputed issue is whether she received a promotion to the position of parts and service manager and

21

service manager (i.e., parts and service director), or whether she simply received a promotion to service manager. The defendants claim the latter is true, while the plaintiff claims the former is true, except that she did not receive the compensation appropriate for someone in that position. Remaining undisputed, however, is the fact that plaintiff received a promotion, and the position of parts and service director was no longer open for applicants, either because plaintiff filled it, or because it was eliminated. Either scenario precludes plaintiff from presenting a prima facie case.

Plaintiff's own argument belies this conclusion. The gravamen of her claim here is not that she did not receive a promotion. Rather, it is simply that she did not receive the payment that she expected to receive. This allegation, however, finds a home in her claim of discrimination in compensation. Summary judgment is thus granted as to plaintiff's claim of discrimination in promotion.

## D.     Equal Pay Act and Wage Discrimination Claims

Plaintiff's final two claims are somewhat wedded, in terms of the facts relevant to each. A claim of wage discrimination, and a claim under the Equal Pay Act are, however, very different claims with different evidentiary burdens allocated between the parties. *See Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019-20 (11th Cir. 1994); *see also Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1527-29, 1532-34 (11th Cir. 1992). The court will address plaintiff's Equal Pay Act claim first.

### 1.     Equal Pay Act Claim

To present a prima facie case under the Equal Pay Act, the plaintiff must show that her employer "pays different wages to employees of opposite sexes for equal work on jobs

22

the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Meeks*, 15 F.3d at 1018 (quotations omitted). If the plaintiff presents a prima facie case, the burden of persuasion shifts to the defendant to demonstrate "that the pay differential was justified under one of the four affirmative defenses [set forth in the Act:] (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any factor other than sex." *Id.*

Plaintiff argues that she was promised by Mr. Eckenrod and received the same position that was previously held by Mr. Taff. She further contends that she performed the same duties as Mr. Taff, acting as the service manager and working closely with the parts manager. The defendants argue that plaintiff did not receive the same position, because that position was eliminated when Mr. Taff resigned. In support of this argument, defendants offer the affidavit of Mr. Eckenrod, in which he states "Ms. Cosper did not perform the same duties and did not have the same responsibilities as Mr. Taff . . . ." (Doc. # 35, Ex. 14, p. 2).

Insofar as plaintiff's prima facie case is concerned, the critical issue is whether the positions held by plaintiff and by Mr. Taff are substantially similar for purposes of the Equal Pay Act. Although plaintiff possesses the burden of proof on this issue, she carries this burden upon demonstrating that "the jobs held by the female and male employees . . . are substantially equal." *Miranda*, 975 F.2d at 1533; *see also Arrington v. Cobb County*, 139 F.3d 865, 876 (11th Cir. 1998); *see also Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1032-33 (11th Cir. 1985). Plaintiff need not show that the qualifications of the individual

23

employees holding those jobs are similar.  Rather, only the actual content of the jobs is pertinent to this inquiry.  *See Arrington, supra.*  Upon reviewing the submissions of the parties, the court believes that plaintiff has carried her burden.

The parties do not dispute plaintiff's promotion to the service manager position vacated by Mr. Taff.  The dispute lies in whether this promotion included the additional duties that Mr. Taff held as the parts and service director.  The defendants claim that this is not so, because that position was eliminated upon Mr. Taff's resignation.  Plaintiff argues otherwise.  In her deposition, she testified that the work she did in her position as service manager included "working closely with . . . my parts manager, in helping make decisions, running reports, everything that Darrell Taff did."  (Cosper Dep., pp. 171-72).  Furthermore, plaintiff has produced four different documents, each of which suggests that plaintiff held at least one position in addition to that of service manager.  (*Id.*, Ex. 8).

The defendants argue that these documents are not dispositive.  They contend that the statement of Mr. Eckenrod in his deposition, coupled with the fact that plaintiff's predecessor had more experience than plaintiff, defeats plaintiff's Equal Pay Act claim.  As discussed supra, the latter argument is irrelevant for purposes of plaintiff's prima facie case.  As to the former, the court does not find compelling the conclusory statement of Mr. Eckenrod.  The documents produced by plaintiff may not be dispositive, but they certainly go a great distance in bolstering her testimony that the jobs were substantially similar.

The defendants can still defeat plaintiff's claim by demonstrating that one of the four affirmative defenses applies to the pay differential.  Although the defendants do not assert defenses by name, the court hears the defendants proffering both the seniority system

24

defense and the catchall, "any factor other than sex" defense. The defendants have not carried their burden of persuading this court that either defense applies to the instant facts. *See Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 591 (11th Cir. 1994) ("[B]y moving for summary judgment under the EPA, defendants thrust before the court for scrutiny not only the merits of plaintiff's evidence, but the strength of their own defense . . . .").

"[A] seniority system . . . should be uniformly enforced and written. . . . If . . . relied upon as an affirmative defense, [defendants] must be able to identify standards for measuring seniority which are systematically applied and observed." *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995) (citations and quotations omitted); *see also Mulhall*, 19 F.3d at 599. The defendants have come forward with no evidence of a formal written policy delineating the standards by which employees are compensated based upon their seniority. Rather, defendants have only proffered the fact that Mr. Taff, plaintiff's predecessor, was her senior. This fact falls woefully short of the evidence necessary to carry the defendants' burden on this issue.

As for the catchall defense, the defendants reassert their argument that the position held by Mr. Taff was in fact a dual position consolidated into one upon his resignation. Although the defendants offer substantially more evidence on this point, plaintiff has come forward with documentary evidence that suggests she held more than one position after she was promoted to service manager. Although the defendants had the opportunity to rebut these documents, they chose only to argue the documents as inconclusive. This may well be true, but in their present, unassailed state, the documents render ineffective defendants'

catchall defense. Summary judgment on plaintiff's Equal Pay Act claim is accordingly denied.

## 2.    Title VII Wage Discrimination Claim

To present a prima facie case of wage discrimination, plaintiff must show

that she occupies a job similar to that of higher paid males. Once a *prima facie* case is established, the defendant must articulate a legitimate, non-discriminatory reason for the pay disparity. This burden is exceedingly light; the defendant must merely proffer non-gender based reasons, not prove them. Once such a justification is advanced, the plaintiff must demonstrate by a preponderance of the evidence that the employer had a discriminatory intent. In other words, the plaintiff must show that a discriminatory reason more likely than not motivated [the employer] to pay her less.

*Meeks*, 15 F.3d at 1019 (citations and quotations omitted); *see also Mulhall*, 19 F.3d at 597-98. Unlike her claim under the Equal Pay Act, plaintiff's wage discrimination claim requires her to carry the burden of proof at all times. See Mulhall, 19 F.3d at 597. Thus, in proving discriminatory intent, plaintiff must consider each non-discriminatory reason proffered by the defendants "head on and rebut it . . . [T]he employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

Plaintiff has come forward with sufficient evidence to establish her prima facie case. In response, the defendants proffer two non-discriminatory reasons for the discrepancy: the consolidation of positions upon Mr. Taff's resignation; and the seniority and experience of Mr. Taff. Although plaintiff has come forward with sufficient evidence to rebut the former reason, she has failed to proffer any evidence whatsoever that might rebut the latter. Plaintiff has thus failed to carry her burden with respect to her wage discrimination claim. Summary judgment is accordingly granted as to this claim.

## V.    Conclusion[11]

The court will enter an appropriate order in conformity with this memorandum of

opinion.

Done, this **30** of November, 2001.


EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

---

[11] The court addresses several house-cleaning issues here. First, insofar as the defendants have moved for summary judgment on plaintiff's claims for punitive damages, the court believes it would be premature to reach this issue now. Second, insofar as plaintiff has attempted to plead claims regarding alleged discrimination in her receipt of bonuses, or in her alleged reduction in pay upon transfer to the position of service writer in the truck shop, the court finds the evidence submitted and plaintiff's effort on summary judgment insufficient for the continued maintenance of these claims. Insofar as they have been pleaded by plaintiff, the court finds them abandoned. Finally, the court entered an order on August 3, 2001, which permitted plaintiff to amend her complaint to state a claim of invasion of privacy against Allan Hassle. (Doc. # 26). The plaintiff has not opposed defendants' motion for summary judgment on this count; indeed it appears plaintiff has abandoned it altogether. Accordingly, summary judgment as to the claim of invasion of privacy is granted.